**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA AT HUNTINGTON**

**UNITED STATES OF AMERICA**

**v.** **CRIMINAL NO. 3:25-cr-00154-01**

**JOSHUA WILLIE MCCARVER**
**also known as "TJ"**

**MOTION OF UNITED STATES TO REVOKE THE ORDER RELEASING DEFENDANT ON BOND**

Comes now the United States of America by Courtney L. Finney, Assistant United States Attorney for the Southern District of West Virginia, and pursuant to 18 U.S.C. § 3145(a)(1) submits this motion to revoke the Order of United States Magistrate Judge for the Eastern District of Michigan Anthony P. Patti (hereinafter "the Magistrate Judge" and "EDMI") releasing Defendant on bond. See Exhibit 1.[1]

## Procedural History

On September 9, 2025, a grand jury sitting in the Southern District of West Virginia returned a thirty-one-count indictment against Defendant and nine other individuals. Defendant is named in six of the thirty-one counts with various controlled substance offenses, including violations of 21 U.S.C. §§ 841(a)(1) and 846

[1] As of the filing of this motion, a written release order has not been entered on the court's PACER system. However, the Public Audio File of the detention hearing held in the EDMI is available and attached hereto as Exhibit 1-A.

and 18 U.S.C. § 2. Count One charges defendant with engaging in a conspiracy to distribute a quantity of fentanyl and 50 grams or more of methamphetamine. Count Eleven charges defendant with distributing 5 grams or more of methamphetamine. Count Nineteen charges defendant, along with two co-defendants, with aiding and abetting the distribution of 50 grams or more of a methamphetamine mixture. Count Twenty charges defendant with distributing a quantity of fentanyl. Count Twenty-One charges defendant with distributing 50 grams or more of methamphetamine. Count Twenty-Three charges defendant with distributing 50 grams or more of a methamphetamine mixture.

Defendant was arrested on September 10, 2025, by agents in the EDMI. That same day, Defendant made his initial appearance before the Magistrate Judge in that district. On September 11, 2025, Defendant appeared for a detention hearing before the Magistrate Judge. At the hearing, the Magistrate Judge noted that the rebuttable presumption applied to Defendant's case. See Exhibit 1-A at 19:40. Defendant was ordered released on a $10,000 unsecured bond with certain conditions. See Exhibit 1-A. Those conditions include the requirement that Defendant be on home incarceration, not possess any firearms, report to Pretrial Services Agency as directed, not travel outside the EDMI except to this district for court purposes, avoid all contact with co-

defendants, not use alcohol excessively or use or unlawfully possess a controlled substance, submit to testing for prohibited substances, participate in substance use treatment if directed by the supervising officer, participate in GPS monitoring and comply with its requirements, pay all or part of the cost of GPS monitoring, resolve all outstanding warrants as directed, and appear for court in this district as directed. See Exhibit 1-A. The United States informed the Magistrate Judge of its intent to seek revocation of the release order. The Magistrate Judge granted a 24-hour stay of the release order.

The United States formally noted its intent to seek revocation of the release order and requested a stay from this Court in its filing on September 11, 2025. ECF No. 37. This Court entered a stay of the release order on September 12, 2025, extending Defendant's detention until 4:30 p.m. on September 16, 2025. ECF No. 39. The Court further directed the United States to file this motion prior to 12:00 p.m. on today's date.

The United States now files this motion seeking a revocation of the Magistrate Judge's Order releasing Defendant on bond pursuant to 18 U.S.C. § 3145(a).

**Standard of Review**

"When the district court acts on a motion to revoke or amend a magistrate judge's pretrial detention order, the district court

acts *de novo* and must make an independent determination of the proper pretrial detention or conditions of release." United States v. Stewart, 19 Fed. Appx. 46, 48 (4th Cir. 2001) (citing United States v. Rueben, 974 F.2d 580, 585-86 (5th Cir. 1992)).

**Discussion**

Under the Bail Reform Act, release pending trial is warranted unless there exists no condition or combination of conditions that will "reasonably assure the appearance of the person as required and the safety of any other person and the community." United States v. Boyd, 484 F. Supp. 2d 486, 487-88 (E.D. Va. 2007) (citing 18 U.S.C. § 3142(e)); see also 18 U.S.C. § 3142(g) (setting forth factors to be considered when determining whether the defendant poses a risk of flight or danger to other). Detention is presumptively appropriate when the defendant is charged with a crime for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act. See Boyd, 484 F. Supp. 2d at 487-88 (citing 18 U.S.C. § 3142(e)); United States v. Vargas, 804 F.2d 157, 163 (1st Cir. 1986); United States v. Contreras, 776 F.2d 51, 55 (2d Cir. 1985). When the presumption is invoked pursuant to § 3142(e), the burden of production shifts to the defendant to come forward with evidence to suggest that the presumption is unwarranted in his or her particular case. Boyd, 484 F. Supp. 2d at 488. If the defendant successfully rebuts the

presumption, the burden returns to the government to prove by a preponderance of the evidence that detention is nevertheless warranted. Id. (citing 18 U.S.C. § 3142(f)).

In the instant case, Defendant is charged with multiple controlled substance offenses that carry a maximum term of imprisonment of ten years or more. Therefore, there is a rebuttable presumption of detention under 18 U.S.C. § 3142(e).

The factors to be considered in determining whether to release a defendant pending trial are set forth in 18 U.S.C. § 3142(g) and include: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. See 18 U.S.C. § 3142(g).

**A. The Nature and Circumstances of the Offense**

Defendant is charged with conspiring with other individuals to distribute large quantities of methamphetamine and fentanyl in this district and elsewhere and distributing large quantities of methamphetamine and fentanyl on multiple occasions. ECF No. 1. Count One charges Defendant with conspiring with others from January, 2025 to August, 2025, to distribute 50 grams or more of methamphetamine and a quantity of fentanyl, the penalty is a mandatory minimum of 10 years and up to life of imprisonment. Count Eleven charges Defendant with distributing approximately 55 grams of pure methamphetamine on April 7, 2025, the penalty is a mandatory minimum of 5 years and up to 40 years of imprisonment. Count Nineteen charges Defendant, along with two others, with distributing approximately 112 grams of a methamphetamine mixture on June 2, 2025, the penalty is a mandatory minimum of 5 years and up to 40 years of imprisonment. Count Twenty charges Defendant with distributing approximately 1.5 grams of fentanyl on June 2, 2025, the penalty is up to 20 years of imprisonment. Count Twenty-One charges Defendant with distributing approximately 91 grams of pure methamphetamine on June 5, 2025, the penalty is a mandatory minimum of 10 years and up to life of imprisonment. Count Twenty-Three charges Defendant with distributing approximately 112 grams

of a methamphetamine mixture on July 7, 2025, the penalty is a mandatory minimum of 5 years and up to 40 years of imprisonment.

This indictment is the result of an extended investigation by the Huntington FBI Task Force and other law enforcement agencies, into a group of individuals, including Defendant, participating in a drug trafficking organization (hereinafter "DTO") responsible for trafficking large quantities of methamphetamine and fentanyl in this district. The investigation revealed that Defendant operates the DTO by bringing methamphetamine and fentanyl from the EDMI to this district for distribution. Defendant supplies the members of the DTO with controlled substances for distribution. Defendant maintains a leadership role within the DTO.

During the investigation, agents used a plethora of investigative techniques, including controlled buy operations, physical surveillance, phone geolocation data, and traffic stops. Agents developed multiple confidential human sources (CHS) who were utilized to make numerous controlled purchases of methamphetamine and fentanyl from Defendant and other members of the DTO. The drug transactions charged in the indictment were video and audio recorded.

During the investigation, a CHS would often contact Defendant via recorded telephone call or recorded text message to arrange

the drug transactions.[2] Defendant would then direct the CHS to a location in this district where the DTO distributed controlled substances. Oftentimes, another member of the DTO, one of the co-defendants in this case, was at the location Defendant directed the CHS to and distributed the controlled substance for Defendant. Agents and the CHS arranged the controlled buy operations that are charged in Counts Two through Ten, Thirteen, Fifteen, Seventeen, Eighteen, Twenty-Five, Twenty-Six, and Twenty-Nine of the indictment by contacting Defendant who then directed the CHS to a location in this district to purchase the controlled substances from another member of the DTO. The combined weight of those controlled buys is approximately 839 grams of pure methamphetamine, 502 grams of a methamphetamine mixture, and 6.75 grams of fentanyl. Defendant utilized his cell phone to orchestrate some of the drug transactions while he was present in the EDMI.[3]

The DTO used multiple residences in this district to conduct drug transactions. Oftentimes, Defendant would know when one residence was out of controlled substances and would direct a CHS

[2] Defendant utilized the same phone number during the timeframe of the conspiracy. That phone was recovered from Defendant's girlfriend's apartment in Jackson, Michigan, when he was arrested shortly after leaving her apartment on September 10, 2025.

[3] United States Magistrate Judge Joesph K. Reeder signed search warrants during the investigation that allowed agents to obtain geolocation data from Defendant's cell phone.

to another residence to purchase controlled substances. During one controlled buy operation, Defendant called co-defendant Lamarr Welch over Facetime while a CHS was present to ask if the residence Welch was distributing controlled substances from needed more fentanyl. During a different controlled buy operation, Defendant demonstrated to a co-defendant how to prepare and weigh controlled substances for distribution.

The investigation revealed that Defendant would also travel to this district from the EDMI to distribute controlled substances. Defendant would travel back to the EDMI with drug proceeds. On March 17, 2025, geolocation data on Defendant's cell phone showed him leaving the area around a residence where multiple controlled buy operations took place and traveling back to the EDMI. The FBI Task Force requested the assistance of Ohio State Highway Patrol, who conducted a traffic stop of the vehicle. Defendant and co-defendants Tristan Huffman and William Johnson III were inside the vehicle. Officers searched the vehicle and recovered approximately $27,951 in US currency in knotted plastic bags. All occupants denied ownership of the cash. On July 9, 2025, geolocation data on Defendant's cell phone showed him leaving the area around another residence where multiple controlled buy operations took place and traveling back to the EDMI. The FBI Task Force requested the assistance of the Marion County, Ohio Sheriff's Office, who

conducted a traffic stop of the vehicle. Defendant, Tristan Huffman, William Johnson III, and a female were inside the vehicle. Officers searched the vehicle and its occupants and recovered approximately $23,453 in US currency, including $650 of prerecorded US currency that a CHS used on July 7, 2025, to purchase 112 grams of a methamphetamine mixture from Defendant (Count Twenty-Three).

On September 10, 2025, the FBI Task Force and other law enforcement agencies executed a federal search warrant at a trailer located at 5400 Altizer Avenue, Lot 7, in Huntington, West Virginia.[4] Agents recovered approximately nine pounds of methamphetamine, approximately 370 grams of suspected fentanyl, a loaded firearm, and approximately $3,900 in US currency. Digital scales and packaging materials were also present. The investigation revealed that the DTO uses this trailer to store and distribute controlled substances. Defendant was surveilled returning to the trailer after he distributed 112 grams of a methamphetamine mixture to a CHS on July 7, 2025 (Count Twenty-Three). Defendant also directed a CHS to the trailer on August 7, 2025, and again on August 11, 2025, to purchase 112 grams and 109

[4] Co-defendant Lamarr Welch was present inside the trailer and arrested on the indictment.

grams, respectively, of a methamphetamine mixture (Counts Twenty-Five and Twenty-Six).

Also on September 10, 2025, FBI agents executed a federal search warrant at 18822 Healy Street in Detroit, Michigan, a residence in the EDMI associated with Defendant and co-defendant Darnell McCarver throughout this investigation.[5] During the execution of the search warrant, agents recovered three firearms: a Mack 10 with a device that appears to be a silencer, an AK-47, and a pistol, approximately two pounds of methamphetamine, one ounce of suspected fentanyl, drug paraphernalia and processing equipment, and approximately $9,000 in US currency. A review of the geolocation data from Defendant's cell phone showed his phone pinging in the vicinity of 18822 Healy Street in Detroit, Michigan, over 4,100 times from May 1, 2025, through September 9, 2025. Defendant's cell phone last pinged in the vicinity of the Healy Street residence on September 9, 2025, at approximately 4:10 p.m., the evening before the execution of the search warrant. According to open-source records checks, the Healy Street residence is listed

[5] According to the Pretrial Services Report, this is the residence of Defendant's mother. See Exhibit 2 at 2. Darnell McCarver, a co-defendant in this case and also Defendant's nephew, was arrested at the residence on September 10, 2025. Defendant was arrested leaving his girlfriend's apartment on Granada Drive in Jackson, Michigan, on September 10, 2025.

on Defendant's Michigan identification card and as the mailing address for Defendant's Apple iCloud Account.

Considering the multi-district nature of the offenses, the extremely large quantities of controlled substances involved, the involvement of firearms, and Defendant's leadership role in this DTO, the United States submits that the offenses are serious in nature and that this factor weighs in favor of detention.

**B. <u>The Strength of the Evidence</u>**

The evidence against Defendant is strong. Defendant has been the subject of recorded telephone calls and text messages, is present in audio and video recordings of the conduct resulting in Counts One, Eleven, Nineteen, Twenty, Twenty-One, and Twenty-Three, and has been observed through various surveillance methods throughout the investigation, including at the trailer in Huntington, where agents later recovered nine pounds of methamphetamine, 370 grams of suspected fentanyl, and a loaded firearm. Additionally, geolocation data from Defendant's cell phone frequently placed his cell phone at the Healy Street residence in Detroit, where agents recovered three firearms, including one with a suspected silencer, approximately two pounds of methamphetamine, and an ounce of suspected fentanyl. Also, Defendant was present in the vehicle during the March 2025 traffic stop, where officers recovered approximately $27,951 in US

currency, and during the July 2025 traffic stop, where officers recovered approximately $23,453 in US currency including $650 in prerecorded US currency that a CHS used to purchase methamphetamine from Defendant two days earlier.

Lastly, the cell phone that Defendant utilized to arrange drug transactions was seized from his girlfriend's apartment following his arrest on September 10, 2025.[6] The strength of the evidence weighs in favor of detention.[7]

### C. History and Characteristics of Defendant

Defendant's history and characteristics weigh in favor of detention. Defendant has a criminal history dating back to when he was a juvenile and continuing into his adulthood. See Exhibit 2 at 5-12 (detailing nineteen prior adult arrests and nine juvenile arrests). Defendant was previously convicted of distribution of fentanyl in this district. See Exhibit 2 at 8, see also United States v. McCarver, No. 3:18-cr-00235, ECF Nos. 22, 23. In that case, Defendant was detained, admitted he was responsible for multiple heroin distributions in this district, and was sentenced

[6] This is the residence Defendant wishes to return to if released on bond. See Exhibit 2.

[7] This Court has previously taken the position that this factor is weighed equally among the other factors in 18 U.S.C. § 3142(g). See United States v. Basenback, No. CR 3:23-00155, 2023 WL 6796203, at *2 (S.D.W.Va. Oct 13, 2023).

to eighteen months of imprisonment and three years of supervised release, which was transferred to the EDMI. See Exhibit 2 at 8.

Defendant committed numerous violations of supervised release. See Exhibit 3 at 2-4. Most notably, Defendant was arrested by Michigan State Police at the Greyhound Bus Station in Detroit, Michigan. See Exhibit 3 at 3. Defendant and another individual attempted to board a bus destined for West Virginia when they were stopped by officers. Approximately 458 grams of methamphetamine was recovered from a duffle bag in their possession. Defendant falsely identified himself to officers as "Sims Jones," provided an incorrect date of birth, and provided his bus ticket with the same fake name. Defendant later admitted to being a "middleman" in a drug trafficking arrangement between Detroit, Michigan, and Huntington, West Virginia, which was supported by communications found in his cell phone.

Defendant was also charged with possession of controlled substance while on supervised release after he was found in possession of 124.8 grams of marijuana, sandwich bags, a digital scale, and $7,120 in US currency. See Exhibit 3 at 2. Defendant did not notify his probation officer of this citation. See Exhibit 3 at 3. Defendant also admitted to marijuana use while on supervised release. See Exhibit 3 at 2. Defendant pled guilty to violating conditions of supervised release, which was revoked, and

he was sentenced to ten months of imprisonment followed by 12 months of supervised release. See Exhibit 2 at 8, Exhibit 4.

Defendant was arrested for other crimes while on supervised release, including disobeying a lawful order by an officer, of which he was convicted, driving without a valid license, for which he has an active warrant, and felony delivery of methamphetamine, which was later dismissed without prejudice. See Exhibit 2 at 8-9. Following his term of supervised release, Defendant has been arrested on multiple occasions, including an arrest for homicide. See Exhibit 2 at 11.

Defendant has a history of failing to appear for court. Excluding when he was a juvenile, Defendant has failed to appear for court on twenty-seven occasions. See Exhibit 2 at 7-11. Defendant currently has ten outstanding warrants for failing to appear. See Exhibit 2 at 12-13. All but one of his outstanding warrants are for failing to appear for misdemeanor driving offenses. Defendant's habitual unwillingness to appear for court on misdemeanor offenses in Michigan raises serious concerns and doubt that he will appear in this district for more serious offenses, such as those charged in the indictment, which carry a mandatory minimum of 10 years and up to life of imprisonment.

Defendant, who is twenty-seven years old, has minimal formal/stable employment history. See Exhibit 2 at 2-3. Defendant

claims he operates a house-renovating business; however, the business is nameless, and he does not possess a business licensure of any kind. He is not listed on any of the mortgages, nor does he possess land deeds for the houses he claims he purchased. Most importantly, he admittedly does not make a profit. Defendant's only source of financial support comes from his mother and girlfriend "from time to time" and selling clothes on social media, for which he could not provide any details. It is unclear how he funds his business with no revenue or income. Nevertheless, the traffic stops of Defendant that resulted in the collective seizure of approximately $51,404 in US currency demonstrate that Defendant's livelihood was supported by his involvement in large scale drug trafficking.

Further, at his detention hearing, Defendant claimed he would be able to "transport himself to court if he were to be given a bond." See Exhibit 1-A at 14:45. The United States questions how Defendant would be able to lawfully transport himself from the EDMI to this district for court proceedings; he does not have a valid driver's license and many of his outstanding warrants are for driving without a valid license and not having insurance.

Lastly, Defendant has no ties to this district beyond his repeated drug trafficking here. Considering Defendant's criminal history, his history of violating terms of court supervision, his

history of failing to appear for court and providing a false identity to law enforcement, and his lack of ties to this district or stable income, his history and characteristics weigh in favor of detention.

### D. The Nature and Seriousness of the Danger to Any Person or the Community That Would Be Posed by Defendant's Release

Finally, Defendant’s participation in the large-scale distribution of controlled substances, including his leadership position within the DTO, and the seizure of firearms, speaks to the seriousness of the danger posed by Defendant’s release. Further, distributing controlled substances, like methamphetamine and fentanyl, is inherently dangerous.

Although this was an extended investigation, this is not a case where the investigation proceeded slowly before charging and arresting Defendant. The United States acted swiftly in seeking an indictment, locating, and arresting Defendant. The last date of offense conduct alleged in the indictment was on August 27, 2025. The United States sought an indictment on September 9, 2025. The next day, law enforcement executed multiple search warrants and arrested Defendant. The United States’s quick action demonstrates the danger Defendant poses to not only this community but communities in other districts as well.

Moreover, Defendant's release on home incarceration, even with GPS monitoring, would not reasonably assure the safety of the community, as Defendant would still be able to participate in criminal behavior in substantially the same manner as his offense conduct here. While in the EDMI, Defendant communicated with individuals in this district to arrange and facilitate the distribution of large amounts of controlled substances. The United States notes that law enforcement agents are still working to locate and arrest other defendants charged in this indictment. Defendant's leadership position in the DTO could thus easily be maintained even if he is placed on home incarceration with GPS monitoring. Therefore, this factor also weighs in favor of detention.

**Conclusion**

The United States submits that Defendant does not rebut the presumption against detention and should be detained. Defendant is a danger to other persons and poses a serious risk of non-appearance. Considering the nature and circumstances of the offense, the weight of the evidence against Defendant, Defendant's criminal history, his willingness to commit serious offenses while under court supervision and provide law enforcement with a false identity, his habitual disregard for the court system by failing to appear for court proceedings, and his danger to the community,

there are no conditions that will reasonably assure the safety of any person and the community and his appearance.

Wherefore, the United States respectfully requests that this Court revoke the Order of the Magistrate Judge releasing Defendant on bond and detain Defendant pending further proceedings.

Respectfully submitted,

LISA G. JOHNSTON
Acting United States Attorney

By:

s/Courtney L. Finney
COURTNEY L. FINNEY
Assistant United States Attorney
WV State Bar No. 13386
845 Fifth Avenue
Room 209
Huntington, WV 25701
Telephone: 304-529-5799
Fax: 304-529-5545
E-mail: courtney.finney@usdoj.gov

## CERTIFICATE OF SERVICE

It is hereby certified that the foregoing "MOTION OF UNITED STATES TO REVOKE THE ORDER RELEASING DEFENDANT ON BOND" has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing this 15th day of September 2025, to:

Lex A. Coleman
Assistant Federal Public Defender
300 Virginia Street East
Room 3400
Charleston, WV 25301

s/Courtney L. Finney
COURTNEY L. FINNEY
Assistant United States Attorney
WV State Bar No. 13386
845 Fifth Avenue
Room 209
Huntington, WV 25701
Telephone: 304-529-5799
Fax: 304-529-5545
E-mail: courtney.finney@usdoj.gov